SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK STATE
---------------------------------------x
In Re:  NEW YORK CITY
ASBESTOS LITIGATION                           Index No.: <u>190259/2019</u>
---------------------------------------x
This Document Applies To:


ARNOLD PRITT and RUTH PRITT
---------------------------------------x

**PLAINTIFF'S RESPONSES TO**
**DEFENDANT'S FOURTH AMENDED STANDARD SET OF INTERROGATORIES**
**AND REQUEST FOR PRODUCTION OF DOCUMENTS**

**PRELIMINARY STATEMENT AND OBJECTIONS**

Plaintiff, by and through his attorneys objects to Defendants' Fourth Amended Standard Set Of Interrogatories And Request For Production Of Documents, as well as the Explanation and Definitions and Instructions contained therein (AInterrogatories@), to the extent that they seek to impose upon plaintiff obligations or burdens which are greater than, or inconsistent with New York law.

Plaintiff further objects to these Interrogatories and to each individual request and/or interrogatory, to the extent that they seek information or request the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege or doctrine protecting such documents from disclosure.  The production of any document prepared by the plaintiff's attorneys is not a waiver of any privilege.  The inclusion of or reference to any attorney's name on any responses is not a waiver of any privilege.  Moreover, the documents produced are confidential and may not be disclosed other than to counsel, a party, the court or an expert in this action without order of the Court.  Plaintiff, by providing documents in response to these Interrogatories specifically does not admit the competency, relevancy, materiality, privilege and/or admissibility of such document or of the information or subject matter.  Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

Plaintiff has not completed investigating the facts relating to his case, has not completed his discovery, and has not completed preparing his case.  Therefore, these responses are preliminary and without prejudice to plaintiff's right to discover and/or produce evidence of additional facts and/or additional evidence of existing facts. Plaintiff has made a good faith effort to respond to the Interrogatories, but reserves the right to object to, and to move to have vacated, all of these Interrogatories.

Plaintiff objects to the Interrogatories, and to each individual request and/or interrogatory, to the extent that they seek information that is not within plaintiff's own first-hand knowledge or request the production of documents that are not within plaintiff's possession, custody or control.

Plaintiff further objects to the Interrogatories as overly broad and burdensome and demanding an investigation into matters which are neither relevant to these proceeding nor designed to lead to the discovery of evidence relevant to these proceedings.

Plaintiff does not waive and specifically preserves the following objections:

1. Any and all objections to the competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions.

2. The right to object on any grounds at any time to demand for further responses or further documents to these or any other discovery requests or other discovery proceedings involved or related to the subject matter of the discovery to which information or documents are provided; and,

3. The right at any time to review, correct, add to, supplement or clarify any of these responses.

These objections are incorporated by reference into any amendment and/or supplement to these interrogatories. Moreover, each of these objections is incorporated by reference into to each specific response without regard to whether an additional objection is made in such response.

Subject to these objections and reservations, plaintiff, by and through his attorneys responds as follows:

## INTERROGATORY ANSWERS
## FOR ARNOLD PRITT

1Q.   State the following:
    (a)   your full name, and all other names by which you have been known;
    (b)   age, and date and place of birth;
    (c)   whether you were an adopted child;
    (d)   present marital status, date of current marriage, spouse's maiden name, date of any prior marriages and the names of any prior spouses, if applicable
    (e)   present home address; and
    (f)   social security number.

**1A.**   **(a)**   **Arnold Pritt**
    **(b)**   **October 14, 1943 (67 years)**
           **Burnwell, WV**
    **(c)**   **Birth Child**
    **(d)**   **Married, to Ruth Ann Pritt on October 19, 1964, Maiden Name "Perry"**
    **(e)**   **6891 N Baltimore Rd**
           **Monrovia, IN 46157**
    **(f)**   **xxx-xx-0560**

2Q.   State the following with regard to your father and mother:
    (a)   names;
    (b)   current address (if deceased, state last known address);
    (c)   the current condition of each one's health, including any specific medical problems. If either of your parents are deceased, please state for each deceased parent:
           i.   specific physical problems;
           ii.   date and place of death;
           iii.   age and cause of death for each parent.

**2A.**   **(a)**   **Father: Joseph Woodrow Pritt**
    **(b)**   **Unknown last address**
    **(c)**   **Deceased**

**i. Was otherwise healthy**
**ii., Unknown**
**iii. Cancer**

**(a)      Mother: Sarah Eva Kinley**
**(b)      Lived in North Carolina at an unknown address**
**(c)      Deceased**
    **i. Unknown**
    **ii. Indianapolis**
    **iii. Ovarian cancer**

3Q.   State the following with regard to each of your children:
    (a)      full name;
    (b)      the date of birth;
    (c)      sex;
    (d)      current address (if deceased, state the last known address)
    (e)      social security number;
    (f)      whether birth child or adopted child;
    (g)      current state of each one's health. If any of your children   are deceased, state for each deceased child:
        i.      specific physical problems;
        ii.     date and place of death; and
        iii.    age and cause of death for each child.

**3A.   (a)      Deanna Lynn Harris**
    **(b)      10/29/1964**
    **(c)      Female**
    **(d)      6916 N. Baltimore Rd, Monrovia, IN 46157**
    **(e)      REDACTED**
    **(f)      Birth Child**
    **(g)      Excellent Health**

    **(a)      Michael Lee Pritt**
    **(b)      3/22/1967**
    **(c)      Male**
    **(d)      6703 West Suncloud Dr., New Palestine, IN 46163**
    **(e)      REDACTED**
    **(f)      Birth Child**
    **(g)      Excellent Health**

    **(a)      Sheryl Denise Smith**
    **(b)      6/15/1972**
    **(c)      Female**
    **(d)      12539 S County Rd 500 E, Quincy, IN 47456**
    **(e)      REDACTED**
    **(f)      Birth Child**
    **(g)      Excellent Health**

4Q.   State the complete address of all places you have resided since birth giving the inclusive dates of residence for each place named and as to each state:
    (a)      fuel used for heating and cooking;

(b)     significant improvements (e.g., additions, reinsulation, re-wiring, etc.);
**(c)**     number of family units co-occupying said structure.

**4A.**     **Born in Burnwell, West Virginia**
**Moved to Whittaker, West Virginia- 2nd grade**
**Moved to Crown Hill, West Virginia- 3rd grade to age 17**
**Plaintiff was in the Navy from 1961-1964 and lived on the USS Purdy**
**Moved back to Crown Hill, West Virginia- Aug 1964- Jan 1965**
**Moved to Indianapolis, IN- 1965 to 1975**
**Moved to Monrovia, IN-Rural Route Box 204**
**Moved to Monrovia, IN in September 1995- Present**
**6891 N. Baltimore Rd.**
**Monrovia, IN 46157**

5Q.     For every physician or other health care provider who ever tested, treated, consulted with or examined you up to and including the present date, for any reason whatsoever, please state the following separately as to each:
(a)     name and address of physician or health care provider and, if ongoing, the approximate frequency of said treatment and   services;
(b)     date(s) of test, examination and/or treatment;
(c)     symptoms complained of at the time, if any;
(d)     any diagnosis made;
(e)     treatment or examination given and reason for treatment or examination; and
(f)     any drugs or medications prescribed.

**5A.**     **Although it is possible that the plaintiff consulted other doctors, nurses and health care providers, at the present time, plaintiff is aware of the following doctors and treatment rendered:**

**(a-f)**     **Plaintiff has seen family medicine doctor, Dr. Cindy Brown, for the past 40 years at Community Physician Network at 1011 Main Street, Suite 110, Speedway, IN 46224. Dr. Brown referred Plaintiff to Dr. Satish Kumar Krishnan for a chest x-ray after Plaintiff complained of restricted breathing. <u>See medical records.</u>**

**(a-f)**     **Plaintiff saw Dr. Satish Kumar Krishnan a Pulmonary Disease Specialist at Community Hospital South at 1402 E County Line Rd, Indianapolis, IN 46227. Dr. Krishnan did a chest x-ray and found fluid around the heart. Once Dr. Anoush Jidarian performed the biopsy, Dr. Krishnan informed Plaintiff of his Mesothelioma diagnosis. <u>See medical records.</u>**

**(a-f)**     **Plaintiff saw Dr. Anoush Jidarian M.D. a Thoracic Surgeon with Community Hospital South at 1402 E County Line Rd, Indianapolis, IN 46227. Dr. Jidarian performed a biopsy in June 2019. Biopsy revealed that Mr. Pritt did in fact have malignant mesothelioma. <u>See medical records.</u>**

**(a-f)**     **Plaintiff saw Dr. Gregory Smith, Oncologist at Community Cancer Center South at 1402 E County Line Rd, Indianapolis, IN 46227. <u>See medical records.</u>**

6Q.    For every hospital, clinic or health care institution in which you have ever been admitted, treated, tested, or examined, whether as an "in-patient" or as an "out- patient," please state the following for each such visit:

      (a)    name and address of the facility;
      (b)    dates and description of test, treatment, examination or hospitalization and, if ongoing, the approximate frequency of said treatment and services; and
      (c)    reason for visit to the facility.

**6A.    Although it is possible that plaintiff may have been treated or examined in other institutions, at the present time plaintiff is aware of the following institutions and treatment rendered:**

**(a-c) See Answer to Question 5.**

7Q.   State each of your asbestos-related injuries and/or diseases, describe the nature of those symptoms that you contend are related to your asbestos-related condition(s), and state the date when you first experienced each such symptom and the date of diagnosis and the name of any diagnosing physician and, if different, indicate the date you first became aware of the diagnosis.

**7A.    Beginning at least a year prior to his Mesothelioma diagnosis, Plaintiff started experiencing difficulty breathing and restricted breathing while exerting himself or doing daily activities. He went to his family medicine physician and then was referred to have a chest x-ray. His chest x-ray findings led to a surgical biopsy. Plaintiff was diagnosed with malignant mesothelioma from the June biopsy performed by Dr. Jidarian, and Plaintiff and his family were informed of the mesothelioma diagnosis by Dr. Krishnan.**

8Q.    Describe any pain, incapacity, inability to lead a normal life, inability to work, or disability (including retirement) alleged to have resulted from your medical conditions), including the date and basis therefore.

**8A.    It is impossible for the Plaintiff to identify each and every symptom, adverse reaction or other injury which he has suffered due to his current diagnosis. Since his diagnosis with mesothelioma, plaintiff has experienced increasing shortness of breath, fear of cancer and death, and inconvenience. Plaintiff's mesothelioma has severely disrupted his life, limiting him in his everyday activities and interfering with his living a normal life. He and his family are now dealing with health care situation at all times. This list does not exhaust the new limitations on plaintiff's lifestyle/quality of life.**

9Q.    Have you ever had any biopsies or tissue samples taken?  If so, please state for each such procedure:

      (a)    the name of the physician performing such procedure;
      (b)    the address where such procedure was performed;
      (c)    the date when such procedure was performed; and
(d)    the results, conclusions, and/or diagnosis arising from such procedure.

**9A.          (a-d)    Yes: Dr. Jidarian at Community Hospital South**
**                         See medical records;**

**Surgical Biopsy**
**Malignant Mesothelioma**

10Q.   Have you ever had any chest x-rays, CT Scans and/or pulmonary function tests?  If so, state:

    (a)   the dates and places;
    (b)   the reasons;
    (c)   the results and/or diagnosis resulting therefrom;
    (d)   the location of all chest X-ray films and CT Scans; and
       provide appropriate authorization to obtain all X-rays, CT Scans and pulmonary function tests.

**10A.   Plaintiff has had chest x-rays, CT Scans: Please use the provided release for medical records on RecordTrak to obtain copies from the medical providers listed above.**

11Q.   Have you ever been exposed to, used, inhaled or ingested any of the following substances on a regular basis or at work.  If so, state the date(s), place(s), and circumstances thereof.

| | | |
|---|---|---|
| I.   acids | II.   aluminum | III.   arsenic |
| IV.   barium | V.   beryllium | VI.   butanol |
| VII.   cadmium | VIII.   Carborundum | IX.   chloreothylene |
| X.   chlorine | XI.   chromate | XII.   chromite |
| XIII.   chromium | XIV. coal dust (coal) | XV.   coal tar |
| XVI.   cotton dust | XVII. epoxy | XVIII. ethanol |
| XIX. grinding dust | XX.   iron | XXI. isocyanates |
| XXII. isopropanol | XXIII. lead | XXIV. live chickens |
| XXV. manganese | XXVI. nickel | XXVII. nitrogen dioxide |
| XXVIII. nuclear radiation | XXIX. ozone | XXX. petroleum distillates |
| XXXI. phosgene | XXXII. radiation | XXXIII. silica |
| XXXIV. titanium | XXXV. toluene | XXXVI. welding smoke or fumes |
| XXXVII. zylene | XXXVIII. zinc. | |

**11A.   Plaintiff is unaware of exposure to any of these substances on a regular basis other than acids while working at Rolls Royce, occasionally cadmium, zinc, and lead while working at Bridgeport Brass, and possibly bystander to coal dust as Plaintiff grew up in coal mining towns.**

12Q.   Do you use or have you ever used cigarettes, cigars, pipes, smokeless tobacco, or any other tobacco substance, from birth to the present time?  If so, state the following:

(a)     the brand and type of tobacco product(s) used (e.g., filter, non-filter, chewing tobacco);

(b)     the dates during which you used each such product;

(c)     the amount of the product used per day, during each period of time (e.g., 2 packs of cigarettes per day);

(d)     whether you have ever been told by a physician that you are or were suffering from any disease or illness caused by or contributed to by tobacco; and

(e)     whether you were ever advised by any physician or any other person that use of tobacco products could adversely affect your health and whether you were ever advised to stop using tobacco products, and if so, identify each physician or person who gave you any such advice, the dates on which the advice was given, and state exactly what, if anything, you did in response to that advice.

**12A.     (a-e)     Plaintiff smoked 1 pack of cigarettes per day from ages 17 to 35. During this same time period, Plaintiff smoked a pipe off and on - not consistently, smoked one or two cigars per week off and on - not consistently, and used chewing tobacco, 3oz every 3 days, until age 40.**

13Q.     For each spouse and member of your household, from your birth to the present time, state whether they use or have ever used cigarettes, cigars, pipes, smokeless tobacco, or any other tobacco substance, and if so, state the following:

(a)     the brand and type of tobacco product(s) used (e.g., filter, non-filter, chewing tobacco); and

(b)     the dates during which they used each such product.

**13A.     Plaintiff lived with his mother and father who were smokers, until he moved out at 17. His mother smoked cigarettes, no more than a pack per day, and his father smoked a pipe in his younger years and smoked cigarettes later on.**

14Q.     Do you presently consume or have you in the past consumed alcoholic beverages.  If so, state the following:

(a)     the type of alcoholic beverages consumed;

(b)     the dates during which you consumed each such alcoholic beverage;

(c)     the amount of such beverage you consumed each day; and

(d)     whether you have ever been treated for any illness or disease related to your consumption of alcoholic beverages.

**14A.     Plaintiff has not consumed alcoholic beverages for the past 30-40 years. Prior to that, Plaintiff consumed a small amount of alcohol on social occasions and weekends.**

15Q.     Have you ever been a member of the Armed Forces of the United States?  If so, state the following:

(a)     the branch of the service, serial number, and highest rank held;

(b)     the beginning and ending dates of your military service;

(c)     the type of discharge that you received; and

(d)     whether you sustained any injuries or incurred any illness during military service.

    (e)    if you received a medical discharge, attach a copy hereto and set forth the medical reasons.

**15A.**    **(a-e)**    **Plaintiff served in the U.S. Navy from June 6, 1961 - August 13, 1964. Plaintiff's rank was Machinist's Mate, 2nd Class (Grade E-5). Plaintiff does not recall any injuries or illnesses. Plaintiff received an honorable discharge.**

16Q.    As to each and every employer (including military service) you have had from the time you were first employed to the present, set forth the following:

(Use the attached Chart A)

Include on the chart all employers where you have worked, and all job sites, regardless of whether or not you believe you were exposed to asbestos during the employment. Also include the source of any product identification information provided on Chart A.

**16A.**    **Please see attached Chart A and defendants are also directed to Plaintiff's Social Security printout which will be obtainable from RecordTrak.**

17Q.    Please state the following with respect to each Asbestos-Containing Product identified on Chart A:

    (a)  the color, dimensions, shape, form, texture, weight, appearance and flexibility of each product;

    (b)  the appearance of the package or container indicating the manner of packaging, size, dimensions, color and weight; and

    (c)  the name, logo, label, numerical and alphabetical markings and other markings or words including warnings on the product and package or container.

**17A.**    **Plaintiff was exposed to asbestos while in the Navy from 1961-1964. In 1961, Plaintiff went to "A" School at Great Lakes, and ultimately was promoted to Machinist's Mate 2nd Class (E-5). He spent his active service aboard the USS Purdy, and he spent time in the New York Naval Shipyard in Brooklyn, also known as the Brooklyn Navy Yard, where he came in contact with significant quantities of airborne asbestos fibers. During his service, he was exposed to asbestos while replacing asbestos gaskets and packing on pumps, valves, turbines, HVAC, refrigerating equipment, and other essential equipment on the ship. Machinist's mate's duties involved repairing the propulsion system whenever necessary.**

    **During his civilian life, Plaintiff also worked as a Machine Operator and Materials Handler with Bridgeport Brass in Indianapolis, IN, from 1965-1968. After that, he worked as an electrician for more than 3 decades, ultimately retiring in the early 2000s. Mr. Pritt was exposed to asbestos during his career working as an electrician in the following manner:**

    **Plaintiff was exposed to a variety of asbestos containing electrical equipment including but not limited to casings and housings, ebony panel board, control**

**panels, switches, switchgear, arc chutes and shields, resistors, contactors, transformers, asbestos containing plastics, Bakelite, wires, and phenolic products.**

**Plaintiff was exposed to asbestos while manipulating electrical hook-ups to insulated boilers, insulated pumps, valves, circulating equipment, HVAC systems, compressors and other machinery and equipment. Plaintiff was also exposed to asbestos emanating from these products while standing in the areas where these pieces of machinery and equipment were being worked on by other trades. Plaintiff was often in the presence of insulators, steam-fitters and pipe-fitters who were removing and replacing asbestos gaskets, packing and insulation before and after Plaintiff performed his work. Plaintiff's work on this equipment brought him in direct and frequent contact with airborne asbestos fibers. Plaintiff handled materials often covered in asbestos dust.**

**Plaintiff was also exposed to asbestos while in the presence of carpenters and tapers who were hanging drywall and using mud compounds to float the drywall. Plaintiff also drilled, cut, sawed or otherwise manipulated walls, floors, and tiles that were present or were being installed in existing structures where Plaintiff performed his daily work. These sites include but may not be limited to the sites listed in Chart A. Please see Chart A for site specific information.**

**His work as a civilian brought him in contact with pumps, valves, steam traps, and pipes that were all part of larger steam producing equipment. While it was not his primary job, he had previous experience installing and removing asbestos gaskets and packing to and from this equipment. From time to time, he assisted with this work.  His asbestos exposure in this regard was similar to his exposure in the Navy.**

**Plaintiff performed automotive work throughout his adult life. As a shade tree mechanic, he was exposed to asbestos from brake linings, gaskets, and clutches.**

**Please see "Chart A" and the ACM Chart for more information regarding Plaintiff's exposures to asbestos.**

***Investigation is ongoing at this time and Plaintiff reserves the right to supplement.***

18Q.  If you have retired from your employment, set forth the following:
   (a)  whether said retirement was voluntary or involuntary;
   (b)  the effective date of said retirement;
   (c)  the name of your employer at the time of retirement;
   (d)  the reason for your retirement;
   (e)  whether your retirement was related to any claimed asbestos-related injury; and
   (f)  the amount of pension and/or retirement benefits you are receiving or entitled to receive.

**18A.  (a)  Voluntary**
   **(b)  2003**
   **(c)  Rolls-Royce North America**
   **(d)  At retirement age**

(e)     No

19Q.    State whether you were exposed (either directly, through a co-worker or otherwise), to any Bankrupt Entity's Asbestos-Containing Materials, or products either mined or manufactured, sold, or distributed by a Bankrupt Entity.  If so, state the following;

    (a)     As to each and every employer (including military service) you have had from the time you were first employed to the present, set forth the following, concerning Bankrupt Entities' products only:

        i.   Name of employer;

        ii.  Dates of employment;

        iii. Asbestos-related jobsite and address where Bankrupt Entity's products were being used;

        i.    Dates you were at the jobsite;

        ii.   Job duties at the particular jobsite;

        iii.  Bankrupt Entity's asbestos-containing materials or products to which you were exposed;

        iv.   Other companies using Bankrupt Entity's asbestos-containing materials or products at the jobsite; and

        v.    Whether you received any warnings with respect to the use of said product and the nature of those warnings.

    (b)  If you were exposed to, used, ingested or inhaled any Bankrupt Entity's Asbestos-Containing Products at any time other than in the scope of your employment, state for each such exposure:

        i.    the date, location and circumstances; and

        ii.   manufacturer, the type of product and the name of the manufacturer, distributor, and miner.

**19A.    See Answer to Question 17.**

20Q.    If you were exposed to, used, ingested or inhaled asbestos or asbestos-containing products at any time other than in the scope of your employment, state for each such exposure:

    (a)     the date, location and circumstances; and

    (b)     the type of product and the name of the manufacturer, distributor, and miner.

**20A.    (a-b) N/A**

21Q.    Have you ever been a member of any labor union? If so, state: the name and address of each local, national and international labor union;

    (a)     the inclusive dates of your membership; and

    (b)     any positions you have held with each such labor union, and the dates during which you held such positions.

**21A.    (a)     United Steelworkers**
**    (b)     Member during the period he worked at Bridgeport Brass (1965 – 1968),**

**    (a)     International Brotherhood of Electrical Workers**
**    (b)     Member for 7.5 years during the period he worked outdoor construction.**

**(a)     United Automotive Workers**
**(b)     Member during the period he worked at Rolls Royce.**

22Q.    State whether you have ever seen or received any information, instruction, direction, warning, or directive, from any source whatsoever, concerning alleged dangers of exposure to asbestos or asbestos-containing products, and if so, identify:

        (a)     each such warning, directive, notification, direction, instruction, or information;
        (b)     the means by which such was given to you;
        (c)     the source and the date on which it was received by you; and
        (d)     your response or reaction, including any complaints made or changes in work habits.

**22A.    Plaintiff was never warned by any of his employers about the hazards associated with working with asbestos.**

23Q.    State whether you had available for use during any period of your employment, respirators or masks or other dust inhalation inhibitor, or protective gear and, if so, state the following:

        (a)     the period of time during which said items were available;
        (b)     what instructions were given with regard to the use of each of said items;
        (c)said  whether you used said items and the dates of your use;
        (d)     whether you ever requested said items, and, if so, when, where and to whom the request was made, and the response to the request.

**23A.    Plaintiff states these items were not available.**

24Q.    If you are making a claim for loss of earnings or impairment of earning power because of your medical conditions, state the following:

        (a)     date of commencement of any loss or impairment;
        (b)     the name and address of your employer, your job title and your monthly or weekly rate of pay at the time of the alleged commencement of any loss or impairment;
        (c)     if you had more than one employer during the three year period prior to the date of the commencement of any loss or impairment, as indicated on Chart A, provide your monthly or weekly rate of pay and inclusive dates of such employment during the three year period;
        (d)     your total earnings for the period of three years prior to the commencement of any loss or impairment;
        (e)     the inclusive dates during which you allege that you were unable to work as a result of any loss or impairment and the total amount of pay you claim you lost because of this absence;
        (f)     the date on which any loss or impairment ended; and
        (g)     your monthly or weekly rate of pay which you have received, from the date of any loss or impairment ended through the present time.

**24A.    N/A**

25Q.    Do you claim damages for loss of consortium, society, affection, services, or sexual enjoyment?  If so, please set forth in complete detail all facts on which this claim is based, including a complete description of the loss suffered.

> **25A.    Yes. Ruth Pritt is expecting that she will lose the comfort, care, society, affection and services of her husband Arnold Pritt as a result of his diagnosis.**

26Q.    For each person who is or was partially or totally dependent upon you for financial support and assistance during the last ten years, state:

> (a)    the name, address, sex, age and relationship; and
> (b)    the amounts you contributed during the last ten years for support and assistance.

**26A.    No dependents.**

27Q.    State, in the form of an itemized list, all special damages alleged in this lawsuit including, but not limited to, hospital charges, medical charges, medicines, lost wages, etc., naming the person or organization to whom each item of expense was paid or is due, and, if paid, by whom each item of expense was paid.

> **27A.    Plaintiff's counsel is presently coordinating this information, which will be forwarded upon receipt; defendants are also directed to records received from RecordTrak.**

28Q.    Identify and give the substance of all written statements, recordings, or videotapes which relate to the facts of this lawsuit and the damages you claim given by plaintiff or any witness (provided such information is in plaintiff's possession, custody or control and/or such statements, recordings or videotapes are not protected by attorney-client privilege) in the above-captioned matter.

> **28A.    Objection.  Unduly broad and vague.  Subject to the objection, Plaintiff responds as follows:  At this time, Plaintiff has no such written statements, recordings, or video tapes which relate to the facts of this lawsuit, and has no basis for knowing of any witnesses except for those previously listed.**

29Q.    Have you ever made any claim for, or received any, health or accident insurance benefits, social security benefits, state or federal benefits for disabilities, workers' compensation benefits, veterans' benefits, tort claims or suits, Federal Employers Liability Act claims or suits, Longshoremen and Harbor Workers Act claims or suits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to disability or your medical condition?  If so, state the following:

> (a)    the date and place where each such claim was made;
> (b)    the name and nature of the entity with which the claim was made;
> (c)    any identifying number, such as a docket or petition number, for each claim;
> (d)    the defendant, agency, insurer, employer or other entity to or against whom the claim was made and its file number;
> (e)    the nature of the claim;

(f)    whether you were examined by a physician and if so, the name and address of that physician;

(g)    the result of such claim, including the amount realized by way of settlement, judgment or award upon the claim;

(h)    the name and address of any attorney who represented you with regard to such claims; and

(i)    whether you are presently receiving such benefits.

**29A.  No.**

30Q.   State the following with regard to your asbestos-related legal action:

(a)    Did you file an asbestos-related claim in more than one jurisdiction;

(b)    Identify all of the jurisdiction(s) where an asbestos-related claim has been filed (whether or not these claims have been dismissed or discontinued or otherwise resolved) on your behalf;

(c)    Did you file your asbestos-related claim(s) under more than one Index Number; and

(d)    Provide all of the Index Numbers for all of your asbestos-related claim(s), including all multiple Index Numbers for claims filed in New York County.

**30A.  Plaintiff's counsel, on behalf of Plaintiff, has filed the following lawsuits in New York, County of New York, under Index Numbers 190258/2019 & 190259/2019**

31Q.   State whether or not you have made, filed, or submitted a Claim Against Bankrupt Entity or received funds in settlement from a Bankrupt Entity.  If so, for each claim state the following:

(a)    the date and place where each such claim was made;

(b)    the name and nature of the entity with which the claim was made;

(c)    any identifying number, such as a docket or petition number, for each claim;

(d)    the defendant, agency, insurer, employer or other entity to or against whom the claim was made and its file number;

(e)    the nature of the claim;

(f)    whether you were examined by a physician and if so, the name and address of that physician; and

(g)    whether you received any compensation as a result of such claim, but not the amount.

**31A.  Plaintiff has not filed any claims with any trusts at this time.**

32Q.   State whether you have applied to any Bankrupt Entity or Bankruptcy Court to lift the stay as to your claim or otherwise have attempted to join a Bankrupt Entity to this action.

**32A.  N/A**

33Q.   Have you or your spouse ever been a party to or a witness in any lawsuit, court or administrative proceeding?  If so, please state:

> (a) whether you or your spouse were a party or witness and if party, whether plaintiff or defendant;
>
> (b) the precise name of the lawsuit or proceeding, the court agency in which it was brought and the docket number;
>
> (c) the nature of the charges or claims and, if you or your spouse were a witness, the subject matter of the testimony; and
>
> (d) the disposition of the case.

**33A. N/A**

34Q. Have you or your spouse filed a claim seeking compensation for any alleged asbestos-related condition from any entity, including settlement trusts? Specify "Yes" or "No" only.

**34Q. See Answer to Question 31.**

35Q. Identify all entities, whether or not parties to this lawsuit, with whom you have settled or agreed to settle this lawsuit.

**35A. Plaintiff has not settled nor agreed to settle this lawsuit with any entities; and Plaintiff's counsel, on behalf of plaintiff, has not settled or agreed to settle Plaintiff's lawsuit with any entity.**

36Q. Identify all persons, other than your attorneys, who provided you with any information used in answering these interrogatories, and state the particular information each person supplied.

**36A. Plaintiff relied upon himself in answering these interrogatories except where indicated otherwise. Plaintiff's wife Ruth Pritt helped Plaintiff slightly in remembering doctor's names, dates, places, etc.**

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Section VIII (B)(2)(b) of the CMO, the defendants request that plaintiffs produce for inspection and copying, the documents and things identified below.  The documents and things identified herein shall be produced for inspection and copying at such time as the answers to the interrogatories herein are filed.  The following requests include, but are not limited to, documents that relate to Bankrupt Entities.

You are hereby requested to produce the following documents and things:

1.      All documents identified in your answers to these interrogatories.

   **R.1.    All the documents in our possession are
   Attached or will be provided through RecordTrak.**

2.      All documents relating to the plaintiff's job qualifications and professional licenses held.

   **R.2.    To the extent that any exist, they will be provided.**

3.      All documents relating to the plaintiff's membership in any labor trade association or professional organization.

   **R.3.    To the extent that any exist, they will be provided.**

4.      All documents relating to the plaintiff's military or foreign service, including and not limited to, personnel records, discharge papers, military occupational specialty qualification, promotions, reductions or disciplinary actions.

   **R.4.    To the extent that there are any available, RecordTrak has been provided
   with a duly executed authorization.**

5.      All documents relating to any claim or demand ever made by the plaintiff or the plaintiff's decedent for damages, compensation or other benefits allegedly resulting from any illness or injury, including but not limited to, Claims Against Bankrupt Entities, Industrial Accident Board records, social security disability claim records, federal or state employment compensation claim records, social disability records, pension claim record or any other health or accident insurance claim records.

   **R.5.    N/A.**

6.      All documents in the plaintiff's possession. custody or control relating in any way to the plaintiff's exposure or possible exposure to asbestos, asbestos-containing products and/or asbestos-containing materials.

   **R.6.    Objection, attorney/client privilege; to the extent that this request does not
   invade such privileges, Plaintiff does not have any such material.**

7.      All documents relating in any way to the plaintiff's exposure or possible exposure to silica, acids, beryllium, nuclear radiation, ammonia, cadmium, chlorine, chromates, phosgene, grinding dust, coal dust, cotton dust, nickel, welding smoke or fumes.

**R.7.     Plaintiff does not have any of the materials asked for.**

8.      All documents, of which you have ever become aware, relating in any way to warnings, potential health hazards, instructions or precautions regarding the use or handling of, or exposure to, asbestos, asbestos-containing products, and/or asbestos-containing materials.

**R.8.     To the extent that there are any available, RecordTrak has been provided with a duly executed authorization.**

9.      All applications prepared or submitted by or on behalf of the plaintiff for life insurance, medical insurance, health and accident insurance, and/or disability insurance.

**R.9.     Plaintiff has no such documents in his possession.**

10.     All statements, recorded interviews, films, videotapes, reports, questionnaires, forms or other documents made, submitted, compiled,  prepared or filled out by, on behalf of, or under the  direction of, plaintiff relating in any way to exposure or alleged exposure to asbestos, asbestos-containing products and/or asbestos-containing materials or any other issues relating to this lawsuit, except that information prepared by, for, or at the request of plaintiff's counsel must be identified (including the date made), but need not be produced without any order by the Court, provided that written or recorded communication between plaintiff and counsel, made after an attorney-client relationship has been established need not be produced or identified.

**R.10.    Objection.  Attorney/client privilege; work product privilege.  To the extent that this request does not invade any such privilege, Plaintiff does not have any such material.**

11.     All records relating to comments, complaints, suggestions, or proposals made to your employer or your union, by yourself or by other employees or union members regarding asbestos exposure.

**R.11.    Plaintiff has no such material in his possession.**

12.     All written, recorded, filmed, transcribed or videotaped statements of all parties and non-party declarants pertaining to the subject of this lawsuit, except that information prepared by, for, or at the request of plaintiff's counsel must be identified (including he date made), but need not be produced without an order by the Court, provided that written or recorded communication between plaintiff and counsel, made after an attorney-client relationship has been established need not be produced or identified.

**R.12.    Objection.  Attorney/client privilege; work product privilege.  To the extent that this request does not invade any such privilege, Plaintiff does not have any such material.**

13.    All photographs of the plaintiff at work or in work clothes and all photographs of all products or conditions complained of in the plaintiff's place of employment.

      **R.13.   To the extent that they exist, they will be provided.**

14.    Copies of all itemized bills covering all the special damages and losses and expenses claimed in this matter.

      **R.14.   To be provided; Defendants are also directed to RecordTrak.**

15.    Copies of all reports, correspondence and records from any doctor who has examined the plaintiff, any hospital where plaintiff has been treated either as an inpatient or as an outpatient, except for any reports, records, correspondence, or communications issued by any consulting physicians who have been retained or specially employed in anticipation of litigation or preparation for trial and who are not expected to be called as a witness at trial.

      **R.15.   RecordTrak has all available medical records.**

16.    All tissue specimens, tissue slides, and x-ray films pertaining to the plaintiff.

      **R.16.   RecordTrak has all available medical records.**

17.    Copies of plaintiff's income tax records for the last ten years as well as any other documents, including economic loss reports, upon which plaintiff relies in support of his claims.  If loss of earnings or earning capacity is alleged or claimed to have occurred before the current year, include copies of the income tax returns of the plaintiff from ten years prior to the claimed loss and up to the current tax year.

      **R.17.   RecordTrak has all available income tax records.**

18.    Any asbestos and/or asbestos-containing products of the type to which the plaintiff alleges exposure which the plaintiff has in his possession, custody or control.

      **R.18.   To the extent that any exist, they will be provided.**

19.    All photographs, charts, drawings, diagrams or other graphic representations depicting work conditions at work sites where plaintiff claims he was exposed to asbestos or asbestos-containing products.

      **R.19.   To the extent that any exist, they will be provided.**

20.    All invoices, bills, statements and any other writings or records which plaintiff contends evidence the sale of any products containing asbestos to the place of plaintiff's employment at which plaintiff claims that he was exposed to asbestos.

      **R.20.   To the extent that any exist, they will be provided.**

21.     Any written advice, publication, warnings, order, directive, requirement, or recommendation, which advised or warned of the possible harmful effects of exposure to or inhalation of asbestos or asbestos-containing products in the possession, custody or control of the plaintiff.

   **R.21.   Plaintiff has no such material in his possession.**

22.     Any accident or incident reports which relate to the facts, circumstances or incidents which form the basis of plaintiff's complaint.

   **R.22.   To the extent that any exist, they will be provided.**


Dated:  New York, New York                          Respectfully submitted
        October 28, 2019

                                                    Meirowitz & Wasserberg, LLP
                                                    Attorneys for Plaintiff


                                            By:___/S/ Daniel J. Wasserberg_____
                                                    Daniel J. Wasserberg, Esq.
                                                    535 5th Avenue, 23rd FL
                                                    New York, NY 10017
                                                    (212) 897-1988

## EXHIBIT A

Bankrupt Entity may include, without limitation, one or more of the following:


AC and S, Inc; Artra Group, Inc. (Synkoloid); Amatex Corp.; A.P. Green Industries; Armstrong World Industries; Babcock & Wilcox; Burns & Roe Enterprises; C.E. Thurston.; Celotex Corp.; Combustion Engineering; Eagle-Picher; Fibreboard;  Flintkote; G-1 Holdings (GAF Corp.); Harbison-Walker Refractories Co.; H.K. Porter Co.; Johns-Manville Co.; Kaiser Aluminum; National Gypsum Co.; North American Refractories; Owens Corning; Pittsburgh Corning; Plibrico Refractories; Porter-Hayden; Quigley/Pfizer; Raytech; T.H.A.N.; UNR Industries, Inc.; USG (US Gypsum) Corp.; US Mineral;; Worthington; W.R. Grace.

| Name of Employer | Dates of Employment | Asbestos-Related Jobsite & Address | Job Title & Duties |
|---|---|---|---|
| US Navy | 1961 - 1964 | Great Lakes NST<br><br>USS Purdy<br><br>Brooklyn Naval Shipyard, Brooklyn, NY | **Machinist's Mate**: Repaired, maintained, and operated asbestos-containing machinery and equipment, installed and removed asbestos-containing insulation and parts |
| Bridgeport Brass | 1965 - 1968 | Indianapolis, IN | **Machine Operator/Material Handler**: Operated and repaired asbestos-containing machinery, loaded and unloaded trucks and railroad cars, performed general maintenance and cleaning work |
| Various contractors during apprenticeship | 1970 - 1978 | Various locations in Indianapolis, IN | **Electrician**: Installed, repaired, and maintained asbestos-containing electrical systems, cut, handled and worked with asbestos-containing wires and cables |
| Robins Electric | 1978 - 1979 | Rolls-Royce Corporation f/k/a Allison Gas Turbine f/k/a Detroit Diesel, Indianapolis, IN | **Electrician**: Installed, repaired, and maintained asbestos-containing electrical systems, cut, handled and worked with asbestos-containing wires and cables |
| Barth Electric | 1979 - 1980 | Rolls-Royce Corporation f/k/a Allison Gas Turbine f/k/a Detroit Diesel, Indianapolis, IN | **Electrician**: Installed, repaired, and maintained asbestos-containing electrical systems, cut, handled and worked with asbestos-containing wires and cables |
| Titan Electric | 1980 - 1987 | Rolls-Royce Corporation f/k/a Allison Gas Turbine f/k/a Detroit Diesel, Indianapolis, IN | **Electrician**: Installed, repaired, and maintained electrical systems |
| Various contractors | 1987 - 2003 | Rolls-Royce Corporation f/k/a Allison Gas Turbine f/k/a Detroit Diesel, Indianapolis, IN | **Electrician**: Installed, repaired, and maintained electrical systems |

**ACM\* Used Personally, By Coworker, By Other Companies On Site And To Which You Were Otherwise Exposed**

| CIVILIAN AND RESIDENTIAL WORK | NAVY EQUIPMENT AND SHIPYARD |
|---|---|
| **Friction** | **Pumps** |
| BENDIX | INGERSOLL RAND |
| MCCORD | GARDNER DENVER |
| BRIGGS & STRATTON | BYRON JACKSON |
| KOHLER | WARREN |
| BORG WARNER | NASH |
| | NORTHERN |
| **Construction** | DELAVAL |
| DAP INC. | BUFFALO |
| GEORGIA PACIFIC | WORTHINGTON |
| UNITED STATES GYPSUM | AURORA |
| BONDEX | FMC CORPORATION |
| | |
| **Industrial/Electrical** | **Valves** |
| YORK INDUSTRIAL HVAC | ATWOOD & MORRILL COMPANY |
| CARRIER INDUSTRIAL HVAC | COPES VULCAN |
| TRANE INDUSTRIAL HVAC | FOSTER ENGINEERING |
| ALLEN BRADLEY ELECTRICAL | LESLIE CONTROLS |
| CUTLER HAMMER ELECTRICAL | YARWAY |
| SQUARE D (SCHNEIDER) ELECTRICAL | MUELLER |
| ITE & BULLDOG (GOULDS) ELECTRICAL | VELAN VALVES & TRAPS |
| CARBORUNDUM | STRAHMAN |
| LAMONS | ROCKWELL (FLOWSERVE) |
| WESTINGHOUSE ELECTRICAL | FULTON SYLPHON |
| GENEERAL ELECTRIC ELECTRICAL | CRANE |
| | |
| **Pumps** | **Turbine** |
| AURORA PUMPS | WESTINGHOUSE |
| BELL & GOSSETT PUMPS | GE |
| BYRON JACKSON PUMPS | STURTEVANT |
| CHICAGO PUMPS | |
| CRANE PUMPS | **Gaskets/Packing** |
| INGERSOLL RAND | JOHN CRANE |
| GARDNER DENVER PUMPS | CRANITE |
| NASH PUMPS | GARLOCK |
| GOULDS PUMPS | FLEXITALLIC |
| | |
| **Valves** | **Refractory and Insulation** |
| ATWOOD & MORRILL COMPANY | JOHNS-MANVILLE |
| COPES VULCAN | UNIBESTOS |
| CRANE VALVES | HARBISON-WALKER |
| FULTON SYLPHON | W.R. GRACE ZONOLITE |
| GRINNELL | NARCOLITE |
| MUELLER | AC&S |
| ROCKWELL | ARMSTRONG |
| EDWARDS | A.P. GREEN |
| | CELOTEX |
| **Steam Traps** | EAGLE-PICHER |
| ARMSTRONG | FIBREBOARD |
| SARCO | OWENS CORNING |

| | |
|---|---|
| DUNHAM BUSH<br>HOFFMAN<br>VELAN<br><br>**Various**<br>3M MASKS | GAF<br>KAISER ALUMINUM<br>QUIGLEY<br><br>**Boilers**<br>COMBUSTION ENGINEERING<br>BABCOCK & WILCOX<br><br>**Various**<br>DELAVAL OIL PURIFIER (ALFA LAVAL)<br>GOODYEAR for CRANITE GASKETS<br>ARMSTRONG TRAPS<br>SARCO TRAPS<br>DUNHAM BUSH TRAPS<br>FOSTER WHEELER ECONOMIZERS |